IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:16-CV-19-FL

| | |
|---|---|
| ESTATE OF KEITH ANTHONY VIDAL by and through his Personal Representative, Mary Errigo Wilsey, </br></br> Plaintiff, </br></br> v. </br></br> BRYON VASSEY, in his official and individual capacity; CITY OF SOUTHPORT; CITY OF BOILING SPRING LAKES; JOHN W. INGRAM, V, in his official capacity as Sheriff of Brunswick County, </br></br> Defendants. | ORDER |

     This matter is before the court on motion for judgment on the pleadings (DE 29) by defendants Bryon Vassey and City of Southport. Plaintiff responded in opposition and filed a notice of supplemental authority. In this posture, the issues raised are ripe for ruling. For the following reasons, the motion is granted.

## BACKGROUND

     Plaintiff commenced this action in Brunswick County Superior Court on December 10, 2015, asserting state law and federal law claims arising out of alleged use of excessive force resulting in wrongful death of decedent Keith Anthony Vidal ("Vidal"). Plaintiff seeks compensatory and punitive damages against defendant Bryon Vassey ("Vassey"), a police officer with the City of Southport Police Department, in his individual and official capacity, as well as defendants City of

Southport ("Southport"), City of Boiling Spring Lakes, and John W. Ingram V, in his Official Capacity as Sheriff of Brunswick County.

Plaintiff asserts the following claims in its complaint:

1. Negligence, gross negligence, and wrongful death against all defendants;

2. Action Pursuant to 42 U.S.C. § 1983 against defendant Vassey based on excessive force;

3. Deprivation of life outside the law of the land, under N.C. Const., Art. I, §§ 1, 19, against all defendants;

4. Action pursuant to 42 U.S.C. § 1983 against defendant Southport based upon failure to properly supervise and train;

5. Action against defendant City of Boiling Spring Lakes and defendant Ingram as Sheriff of Brunswick County based upon mutual aid agreements;

6. Action against defendant Southport on the basis of respondeat superior;

7. Punitive damages against all defendants;

On April 5, 2016, the instant matter was stayed until conclusion of a criminal trial against defendant Vassey. Upon conclusion of such trial with judgment of acquittal on May 6, 2016, (see DE 30 at 3), defendants Southport and Vassey filed their answer to the complaint on May 9, 2016, along with the instant motion for judgment on the pleadings as to certain claims asserted against them. In particular, they seek dismissal of plaintiff's third claim against them under the North Carolina Constitution; sixth claim against defendant Southport for respondeat superior; and seventh claim for punitive damages against defendant Southport and Vassey in his official capacity.

Under the court's case management order entered June 3, 2016, the deadline for completion of discovery in this case is February 28, 2017, and the deadline for dispositive motions is March 30, 2017.

**STATEMENT OF FACTS**

The facts alleged in the instant complaint, as pertinent to the instant motion, may be summarized as follows. On January 5, 2014, Vidal was eighteen years old and suffered from mental health conditions, including schizophrenia. On that date, a family member of Vidal called 911 for medical assistance and possible transportation of Vidal to a medical facility for psychiatric evaluation if required. Upon arriving at the scene, an officer with Boiling Spring Lakes Police Department observed Vidal sweeping the floor in the hallway of his residence, holding also a small screw driver in his hand. The Boiling Spring Lakes police officer requested backup from defendant Vassey, pursuant to a law enforcement mutual aid agreement. A second officer from Brunswick County Sheriff's department also arrived and engaged in conversation with Vidal for several minutes with no violence occurring prior to the arrival of defendant Vassey. Defendant Vassey was the third law enforcement officer to arrive on the scene.

As defendant Vassey was entering the residence he commented to emergency medical personnel who were also present that he was going to "kick ass and take names" or words to that effect. (Compl. ¶ 22). Defendant Vassey, upon entering the residence, immediately commented to the two other officers that "we do not have all day to stand here – just Taze him" or words to that effect. (Id. ¶ 23). Defendant Vassey did not engage Vidal in any conversation upon his arrival on the scene nor did he utilize any Crisis Intervention Techniques during the encounter. Defendant

3

Vassey, the Senior Officer on the scene, immediately directed the other two law enforcement officers, to use their Tasers on Vidal, without giving Vidal any warnings or commands.

In response to defendant Vassey's command, one of the other officers deployed her Taser on Vidal, causing Vidal to fall to the floor in the hallway of his home and become incapacitated. The other officers then physically restrained Vidal on the floor while he was incapacitated by the Taser. While Vidal was on the floor in this manner, defendant Vassey drew his firearm, placed it near the ear of one of the other officers, and fired a single gunshot into Vidal, without giving any warnings or commands to those present, including Vidal. Vidal died that day as a result of being shot by defendant Vassey.

Plaintiff is the estate of Vidal, acting by and through Vidal's personal representative and mother, Mary Errigo Wilsey.

## DISCUSSION

A.      Standard of Review

In reviewing a motion for judgment on the pleadings, under Rule 12(c), the court applies "the same standard" as for motions to dismiss made pursuant to Rule 12(b)(6). Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir.1999). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

4

"Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement [,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (internal quotations omitted).

B.   Analysis

   1.   North Carolina Constitutional Claim

Defendants Vassey and Southport argue that plaintiff's claim against them under the North Carolina Constitution must be dismissed because plaintiff has an adequate remedy under state law for the alleged injuries suffered.

"[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim" under the North Carolina Constitution. Corum v. Univ. of N. Carolina Through Bd. of Governors, 330 N.C. 761, 782 (1992). Thus, "[t]o assert a direct constitutional claim . . . a plaintiff must allege that no adequate state remedy exists to provide relief for the injury" alleged. Copper ex rel. Copper v. Denlinger, 363 N.C. 784, 788 (2010).

Here, in support of its state constitutional claim, plaintiff alleges that defendant Vassey, and defendant Southport acting through its agent Vassey, "took [] Vidal's life in a manner that was outside the law of the land," through "negligent acts that were so egregious that they exceeded the bounds of conduct tolerated by civilized society for state actors." (Compl. ¶ 57). Plaintiff alleges

5

that the acts of defendant Vassey were reckless, wanton, and needlessly violated police protocols, violated rules of engagement for interactions with persons suffering from mental health conditions, and needlessly placed Vidal at risk of injury and death. (Id. ¶ 56).

An adequate remedy exists at state law for the injuries alleged in this claim. Indeed, in its first claim for relief, plaintiff asserts a negligence, gross negligence, and wrongful death claim against all defendants for the same injuries. Plaintiff alleges in its first claim that defendant Vassey, while acting on behalf of all defendants, violated duties owed to Vidal by "using excessive and unnecessary deadly force; failing to protect [] Vidal from harm because of his mental illness; and by failing to use appropriate, accepted Crisis Intervention Techniques." (Id. ¶37). Plaintiff alleges that the actions of defendant Vassey in causing Vidal's death were "grossly negligent, malicous, wanton, willful, and/or done with careless and reckless disregard for the rights and safety of others." (Id. ¶ 39). Therefore, where plaintiff has an adequate remedy under these state law claims for redress of its injuries, plaintiff's claim under the North Carolina Constitution must be dismissed. See Corum, 330 N.C. at 782; Copper, 363 N.C. at 788.

Plaintiff argues that because defendant Vassey may raise a defense of qualified immunity this renders plaintiff's remedy inadequate under state law. This argument is flawed. As an initial matter, "qualified immunity" is a term used to describe a defense to a federal constitutional action under 42 U.S.C. § 1983, not state common law claims. See Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). "Public officer immunity" or "public official immunity" properly may be raised as a defense to state law claims, but such defense may be overcome where the challenged action was "done with malice," i.e., "wantonly, . . . contrary to the actor's duty, and . . . intended to be injurious to another." Wilcox v. City of Asheville, 222 N.C. App. 285, 288-89 (2012); see Bailey v. Kennedy,

6

349 F.3d 731, 742 (4th Cir. 2003). Accordingly, in either event, the availability of such immunity defenses does not render the state law claims inadequate. Indeed, plaintiff alleges here that defendant acted maliciously, willfully, wantonly, and recklessly, in disregard for clearly established rights of Vidal, which allegations may provide a means to overcome such defenses if properly supported by evidence in this case. See, e.g., Bailey, 349 F.3d at 742 (allegations that officer seized victim for an "emergency mental evaluation . . . contrary to his duty" were sufficient to overcome public officer immunity and qualified immunity).

Accordingly, plaintiff's claims under the North Carolina Constitution must be dismissed with prejudice where plaintiff has an adequate remedy under state law for the injuries alleged.

2. Respondeat Superior Claim

Defendant Southport argues that plaintiff's sixth claim for respondeat superior should be dismissed as to defendant Southport.

With respect to respondeat superior liability under 42 U.S.C. § 1983, it is well established that defendants "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Thus, plaintiff's claim of respondeat superior in this part must be dismissed with prejudice.

With respect to respondent superior under state law, plaintiff's asserted theory of respondeat superior fails due to insufficient factual allegations supporting the claim. "The element of control . . . is central to respondeat superior" under North Carolina law. Gupton v. United States, 799 F.2d 941, 943 (4th Cir. 1986). "[W]here a servant has two masters, a general and special one, the latter, if having the power of immediate direction and control, is the one responsible for the servant's negligence[;] [t]he power of control is the test of liability under the doctrine of respondeat superior."

7

Cahill v. HCA Mgmt. Co., 812 F.2d 170, 171 (4th Cir. 1987) (quoting Jackson v. Joyner, 236 N.C. 259, 261 (1952)).

Here, plaintiff alleges that defendant Vassey was dispatched to the home of Vidal on the subject date, pursuant to a "Law Enforcement Mutual Aid Agreement," under which "each requesting agency was responsible and liable for the actions of the responding agency's law enforcement officers." (Compl. ¶10). A law enforcement officer with Boiling Spring Lakes Police Department arrived first on the scene and "requested backup from [d]efendant [] Vassey of the City of Southport Police Department, having worked with [d]efendant Vassey on at least two prior occasions." (Id. ¶18). Plaintiff asserts that all of the acts of defendant Vassey were performed in the course of his employment with defendant Southport, on behalf of defendant Southport, but "while acting on behalf of the City of Boiling Springs Lakes and the County of Brunswick pursuant to Mutual Aide Agreements in effect among the three governmental Defendants." (Compl. ¶32).

Under North Carolina law, mutual aid agreements may provide a means under which "any law-enforcement agency may temporarily provide assistance to another agency in enforcing the laws of North Carolina if so requested in writing by the head of the requesting agency." N.C. Gen. Stat. § 160A-288(a). "While working with the requesting agency under the authority of this section, an officer shall have the same jurisdiction, powers, rights, privileges and immunities (including those relating to the defense of civil actions and payment of judgments) as the officers of the requesting agency in addition to those he normally possesses." (Id.). Moreover, "[w]hile on duty with the requesting agency, he shall be <u>subject to the lawful operational commands of his superior officers in the requesting agency</u>, but he shall for personnel and administrative purposes, remain under the control of his own agency, including for purposes of pay." Id. (emphasis added).

8

In light of the allegations in the complaint and the requirements for mutual aid agreements set forth in North Carolina law, N.C. Gen. Stat. § 160A-288(a), respondeat superior liability against defendant Southport is foreclosed in this instance in accordance with the rule stated in <u>Cahill</u>, 812 F.2d at 171, and <u>Jackson</u>, 236 N.C. at 261. In the instant law enforcement operation, defendant Vassey had "two masters, a general and special one," with "the latter . . . having the power of <u>immediate direction and control</u>." <u>Id.</u> (emphasis added). As such, the one with the "power of control," here defendant City of Boiling Spring Lakes, "is the one responsible for the servant's negligence," and not the one with general control for administrative or personnel purposes, here defendant Southport. <u>Id.</u>

Plaintiff argues, nonetheless, that it has alleged that defendant Southport may be liable on a theory of "prior pattern or custom of constitutional law violations" and "failure to provide . . . training or take the necessary remedial action," pursuant to <u>Monell v. Dept. of Social Services of the City of New York</u>, 436 U.S. 658 (1978), and <u>Turner v. City of Greenville</u>, 197 N.C. App. 562, 567 n.2 (2009). (<u>See</u> DE 35 at 3-4). Plaintiff, however, separately has alleged failure to train and inadequate policies and practices as a basis for its first claim for relief against defendant Southport, based upon negligence, gross negligence, and wrongful death, (<u>see</u> Compl. ¶¶ 42-43), as well as fourth claim for relief against defendant Southport, based upon 42 U.S.C. § 1983 (<u>see</u> <u>id.</u> ¶¶ 61-72). Defendant Southport has not moved to dismiss such claims, and the court's decision here does not address the viability of such claims. Rather, the court addresses here only plaintiff's claim of respondeat superior, which must be based upon "immediate direction and control." <u>Cahill</u>, 812 F.2d at 171, <u>Jackson</u>, 236 N.C. at 261.

Where defendant Southport is not alleged to have provided the requisite immediate direction and control over defendant Vassey in the instant law enforcement operation, plaintiff's claim of respondeat superior against defendant Southport must be dismissed without prejudice.

3.  Punitive Damages

Defendant argues that plaintiff's claim for punitive damages against defendant Southport and defendant Vassey must be dismissed on the basis of governmental immunity and for failure to state a claim.

"Municipalities may not be held liable for punitive damages . . . under 42 U.S.C. § 1983." Iglesias v. Wolford, 539 F. Supp. 2d 831, 841 (E.D.N.C. 2008) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)). Accordingly, plaintiff's claim for punitive damages premised upon § 1983 liability against defendant Southport, and against defendant Vassey in his official capacity, which is in all respects a suit against defendant Southport, must be dismissed. In so holding, the court expresses no opinion on the viability of the § 1983 punitive damages claim against defendant Vassey in his individual capacity.

With respect to plaintiff's claim for punitive damages premised upon state law liability, "in the absence of statutory provisions to the contrary, municipal corporations are immune from punitive damages." Long v. City of Charlotte, 306 N.C. 187, 208 (1982). "[B]y specifically including punitive damages as an item of damages recoverable in a wrongful death action under N.C. Gen. Stat. § 28A-18-2, the General Assembly has provided a statutory exception to the common law prohibition on punitive damages against municipal corporations." Jackson v. Hous. Auth. of City of High Point, 316 N.C. 259, 262 (1986). Accordingly, while plaintiff may not seek punitive

10

damages on the basis of negligence, immunity is not a bar to punitive damages premised upon plaintiff's wrongful death claim. See id.

Defendants nonetheless argue that plaintiff has not sufficiently pleaded a punitive damages claim against defendant Southport and defendant Vassey in his official capacity, because plaintiff has not alleged personal involvement by defendant Southport. Under North Carolina law, "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud. (2) Malice. (3) Willful or wanton conduct." N.C. Gen. Stat. § 1D-15(a). "Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another." N.C. Gen. Stat. § 1D-15(c). "Punitive damages may be awarded against a person <u>only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages</u>, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." Id. (emphasis added).

In this case, plaintiff has failed to state a claim under North Carolina law for punitive damages against defendant Southport (or defendant Vassey in his official capacity), because plaintiff alleges malicious, willful, or wanton conduct only on the part of defendant Vassey. (See Compl. ¶¶ 39, 84). Plaintiff does not allege that defendant Southport or any official of defendant Southport "participated in the conduct constituting the aggravating factor giving rise to the punitive damages." N.C. Gen. Stat. § 1D-15(c).

11

Case 7:16-cv-00019-FL   Document 39   Filed 08/15/16   Page 11 of 12

In sum, plaintiff's claim for punitive damages against defendant Southport and defendant Vassey in his official capacity premised upon § 1983 liability and negligence must be dismissed with prejudice. Plaintiff's claim for punitive damages against defendant Southport and defendant Vassey in his official capacity premised upon wrongful death must be dismissed without prejudice.

## CONCLUSION

Based on the foregoing, the instant motion for judgment on the pleadings (DE 29) is GRANTED. Plaintiff's third claim against defendant Southport and defendant Vassey under the North Carolina Constitution is DISMISSED WITH PREJUDICE. Plaintiff's sixth claim against defendant Southport for respondeat superior premised upon 42 U.S.C. § 1983 is DISMISSED WITH PREJUDICE. Plaintiff's sixth claim against defendant Southport for respondeat superior premised upon state law is DISMISSED WITHOUT PREJUDICE. Plaintiff's seventh claim against defendant Southport and defendant Vassey in his official capacity for punitive damages premised upon 42 U.S.C. § 1983 liability and negligence is DISMISSED WITH PREJUDICE. Plaintiff's seventh claim against defendant Southport and defendant Vassey in his official capacity for punitive damages premised upon wrongful death is DISMISSED WITHOUT PREJUDICE.

SO ORDERED, this the 15th day of August, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge